1

2

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                        **DISTRICT OF OREGON**

9                        **PORTLAND DIVISION**

10

**JOAN BAUGH,**                              )

11                                           )

                   Plaintiff,          )      03:08-01237-HU

12                                           )

       v.                                    )

13                                           )      **FINDINGS AND**

**MICHAEL J. ASTRUE,**                       )      **RECOMMENDATION**

14   Commissioner of Social Security,        )

                                             )

15                  Defendant.               )

                   _____

16

Tim D. Wilborn

17   Wilborn Law Office, P.C.

P.O. Box 2768

18   Oregon City, OR 97405

19        Attorney for Plaintiff

20   Adrian L. Brown

United States Attorney

21   District of Oregon

Britannia I. Hobbs

22   Assistant United States Attorneys

District of Oregon

23   1000 SW Third Avenue, Suite 600

Portland, OR 97204-2902

24

Leisa A. Wolf

25   Nancy A. Mishalanie

Social Security Administration

26   Office of the General Counsel

701 Fifth Avenue, Suite 2900, M/S 901

27   Seattle, WA 98104-7075

28        Attorneys for Defendant

FINDINGS AND RECOMMENDATION       1

HUBEL, Magistrate Judge:

## Introduction

The matter before the court is Plaintiff's Motion For Approval Of Attorney's Fees (doc. #25) pursuant to 42 U.S.C. § 406(b) ("§ 406(b)"). The fee requested is $17,187.63, which counsel represents to be "25% of the retroactive benefits" awarded.[1] Based on the factors established in *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817 (2002), and explained in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (en banc), the motion should be granted in part and a § 406(b) fee of $8,593.81 should be awarded to Plaintiff's counsel.

## Procedural Background

On April 19, 2004, Plaintiff filed applications for Social Security Disability ("SSD") insurance benefits and Supplement Security Income ("SSI") disability benefits. The applications were denied and Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Two hearings were held before the ALJ, Jean Kingrey, who issued a decision finding Plaintiff not disabled on June 19, 2007. Plaintiff's request for Appeals Council review of the ALJ's decision was denied on August 19, 2008. As a result, the ALJ's decision became the final order of the Commissioner of Social Security ("Commissioner").

Plaintiff brought this action on October 21, 2008, seeking judicial review of the Commissioner's decision. Plaintiff sought reversal of the ALJ's decision and order of the Commissioner or to

---

[1] Under 42 U.S.C. § 406(b), the court may award a reasonable fee no more than 25 percent of the claimant's retroactive award.

FINDINGS AND RECOMMENDATION    2

1    remand the cause "for proper evaluation of the evidence or a
2    rehearing *de novo* on the following grounds: (1) The decision of the
3    Commissioner is without foundation, not supported by substantial
4    evidence, and is, in fact, contrary to the evidence presented [and]
5    (2) The Commissioner erred by failing to apply the appropriate
6    standard of law." (Compl. ¶ 7.)

7        On August 26, 2009, the parties stipulated that the case be
8    remanded to the Commissioner for a *de novo* hearing and assignment
9    to a new ALJ. On August 31, 2009, Judge Ancer L. Haggerty ordered
10   that the case be remanded for a *de novo* hearing and further ordered
11   the new ALJ to: (1) Conduct a new hearing, further develop the
12   record regarding Plaintiff's physical and mental impairments, issue
13   a new decision, and obtain medical expert testimony qualified in
14   psychiatry; (2) Re-evaluate Plaintiff's credibility and lay witness
15   testimony; (3) Further reassess Plaintiff's maximum residual
16   functional capacity and consider all treating and examining medical
17   source opinions, especially from Drs. Rawlins, Lahr, Pritchard, and
18   Roberts; (4) Obtain testimony from a vocational expert and present
19   a complete hypothetical question containing all of the credible
20   limitations; and (5) Re-evaluate Steps Two-through-Five of the
21   sequential evaluation process.

22       On November 25, 2009, Plaintiff applied for fees pursuant to
23   28 U.S.C. § 2412 *et. seq*. The parties had stipulated to an award
24   of $5,000 in Equal Access to Justice Act ("EAJA") fees. On
25   November 30, 2009, Judge Haggerty ordered an award of $5,000 in
26   EAJA fees to Plaintiff's counsel. Lastly, Plaintiff filed the
27   present motion for attorney's fees on January 5, 2011.

28   ///

FINDINGS AND RECOMMENDATION    3

**Legal Standard**

## I.   The Statute

In Social Security cases, attorney fee awards are governed by § 406(b), which provides in pertinent part:

> (1)(A) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment[.]

42 U.S.C. § 406(b)(1)(A).

## II.   Controlling Precedent

*Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817 (2002) concerned fees awarded under § 406(b). *Gisbrecht*, 535 U.S. at 792. Specifically, the Supreme Court addressed the question, which sharply divided the Federal Courts of Appeals: "What is the appropriate starting point for judicial determinations of a reasonable fee [under § 406(b),] for representation before the court?" *Id.*

For the purposes of the opinion, the Supreme Court consolidated three separate actions where the District Court, based on Circuit precedent, declined to give effect to the attorney-client fee arrangement. *Id.* at 797. Instead, the District Court employed a lodestar method whereby the number of hours reasonably devoted to each case was multiplied by a reasonable hourly fee. *Id.* at 797-98. The Court concluded that § 406(b) requires a court to review the contingent-fee arrangement, to assure they yield reasonable results. *Id.* at 807. Congress provided one boundary line, *e.g.*, contingent-fee agreements are unenforceable if they exceed 25 percent of past-due benefits. *Id.* But, within that 25

FINDINGS AND RECOMMENDATION      4

1  percent boundary, "*the attorney for the successful claimant must*
2  *show that the fee sought is reasonable for the services rendered.*"
3  *Id.* (emphasis added).

4      Courts are instructed to first test the contingent-fee
5  agreement for reasonableness.  *Id.* at 808.  An award of § 406(b)
6  fees can be appropriately reduced based on (1) the character of the
7  representation; (2) the results achieved; (3) when representation
8  is substandard; (4) if the attorney is responsible for delay; and
9  (5) if the benefits are large in comparison to the amount of time
10 counsel spent on the case.  *Id.*  The claimant's attorney may be
11 required to submit a record of hours spent representing the
12 claimant and a statement of the lawyer's normal hourly billing
13 charge for noncontingent-fee cases in order to aid the court's
14 assessment of reasonableness.  *Id.*  Finally, the *Gisbrecht* court
15 stated that, "[j]udges of our district courts are accustomed to
16 making reasonableness determinations in a wide variety of contexts,
17 and their assessments in such matters, in the event of an appeal,
18 ordinarily qualify for highly respectful review."  *Id.*

19     In *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (en
20 banc), the Ninth Circuit reviewed three consolidated appeals and
21 determined that, in each case, the district court failed to comply
22 with *Gisbrecht's* mandate.  *Crawford*, 586 F.3d at 1144.  In each of
23 the three cases, the claimant signed a written contingent fee
24 agreement whereby the attorney would be paid 25 percent of any
25 past-due benefits awarded.   The *Crawford* court noted that
26 contingency-fee agreements, which provide for fees of 25 percent of
27 past-due benefits, are the norm for Social Security practitioners.
28 *Id.* at 1147.  However, since the Social Security Administration

FINDINGS AND RECOMMENDATION     5

("SSA") "has no direct interest in how much of the award goes to counsel and how much to the disabled person, the district court has an affirmative duty to assure the reasonableness of the fee is established." *Id.* at 1149.   Performance of that duty begins by asking whether the amount of the fee agreement need be *reduced*. *Id.*

The district courts' decisions, in each of the consolidated cases, were overruled by the Ninth Circuit because they relied "on lodestar calculations and reject[ed] the primacy of lawful attorney-client fee agreements."  *Id.* at 1150 (citing *Gisbrecht*, 535 U.S. at 793, 122 S.Ct. 1817).   Specifically, the district courts erroneously began with a lodestar calculation by comparing the lodestar fee to the requested fee award.  *Id.*   The attorneys requested fees representing 13.94%, 15.12%, and 16.95% of past-due benefits.   *Id.* at 1145-47.   "*The attorneys . . . themselves suggested that the full 25% fee provided for by their fee agreements would be unreasonable.*"  *Id.* at 1150 n.8.   If the attorneys had received the 25 percent fee provided for by their agreements, they would have been awarded fees ranging from $19,010.25 to $43,055.75.  *Id.* at 1150.   The district courts, however, reduced the contracted fees by between 53.7% and 73.30% and ultimately awarded fees that represented 6.68% to 11.61% of the past-due benefits.  *Id.*   The Ninth Circuit went on to state that:

> In *Crawford*, for example, the district court awarded 6.68% of the past-due benefits.  From the lodestar point of view, this was a premium of 40% over the lodestar. . . . But from the contingent-fee point of view, 6.68% of past-due benefits was over 73% less than the contracted fee and over 60% less than the discounted fee the attorney requested.  Had the district court started with the contingent-fee agreement, ending with a 6.68% fee would be a striking reduction from the parties' fee

FINDINGS AND RECOMMENDATION     6

1
2
       agreement.   This difference underscores the practical importance of starting with the contingent-fee agreement and not just viewing it as an enhancement.

3 *Id.* at 1150-51.  The other two attorneys, in *Washington* and *Trejo*,

4 were dealt a 23% and a 47% reduction, respectively, from the fees

5 requested.  *Id.* at 1151 n.9.

6      Importantly, the Ninth Circuit also noted that *Gisbrecht* "did

7 not provide a definitive list of factors that should be considered

8 in determining whether a fee is reasonable or how those factors

9 should be weighed[.]" *Id.* at 1151.  They went on to cite *Mudd v.*

10 *Barnhart*, 418 F.3d 424(4th Cir. 2005), for the proposition that:

11 "The [Supreme] Court did not provide a definite list of factors to

12 be considered because it recognized that the judges of our district

13 are accustomed to making reasonableness determinations in a wide

14 variety of contexts." *Id.* (citing *Mudd*, 418 F.3d at 428).

15 **III.  The EAJA**

16      The  EAJA  effectively  increases  the  portion  of  past-due

17 benefits to a successful Social Security claimant. *Gisbrecht*, 535

18 U.S. at 796.  EAJA fees are determined by the time expended and the

19 attorney's hourly rate, capped in most cases at $125 per hour.  *Id.*

20 EAJA fees are awarded if Social Security claimant prevails against

21 the United States in court and the Government's position in the

22 litigation was not substantially justified.  *Id.*  Fee awards may be

23 made under both EAJA and § 406(b), "but the claimant's attorney

24 must refund to the claimant the amount of the smaller fee."  *Id.*

25 (internal citation and quotation marks omitted).

26 *///*

27 *///*

28 *///*

FINDINGS AND RECOMMENDATION     7

**Discussion**

**I.    The Fee Arrangement**

Here, a contingent-fee agreement exists between Plaintiff and her attorney Tim Wilborn ("Wilborn"), by which they agreed that the attorney fee for work in federal court would be the greater of: (1) 25 percent of any past-due benefits received, or (2) any EAJA award obtained.  (Mem. Supp. Pl.'s Mot. Ex. 2 at 3.)  By its terms, the contingency fee agreement is within the statutory limits.  The next inquiry is whether the fee sought exceeds § 406(b)'s 25 percent ceiling, which requires evidence of total past-due benefits. *Dunnigan v. Astrue*, No CV 07-1645-AC, 2009 WL 6067058, at *9 (D. Or. Dec. 23, 2009).

In this case, Plaintiff's counsel has stated that the past-due benefits to be awarded total $68,750.52.  (Mem. Supp. Pl.'s Mot. at 7.)  This is confirmed by the SSA's Notice of Award, which provides: "We usually withhold 25 percent of past due benefits in order to pay the approved lawyer's fee.  We withheld $17,187.63 from your past due benefits in case we need to pay your lawyer." (Mem. Supp. Pl.'s Mot. Ex. 1 at 3.)  Twenty-five percent of $68,750.52 is $17,187.63.

**II.   The Reasonableness of the Fee Sought**

Since the statutory ceiling has not been exceeded, I turn now to my primary inquiry, the reasonableness of the fee sought. Wilborn seeks $17,187.63 in § 406(b) fees in this case.  After applying the *Gisbrecht* factors, as interpreted by *Crawford*, I find that Wilborn has failed to demonstrate that a 25 percent fee is reasonable.

///

FINDINGS AND RECOMMENDATION     8

**A.    Character of Representation**

Substandard performance by a legal representative warrants a reduction in a § 406(b) fee award, as *Gisbrecht* and *Crawford* make clear. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Examples of substandard representation include poor preparation for hearings, failing to meet briefing deadlines, submitting documents to the court that are void of legal citations, and overbilling one's clients. *Dunnigan*, 2009 WL 6067058, at *11 (citing *Lewis v. Sec'y of Health and Human Servs.*, 707 F.2d 246, 250-51 (6th Cir. 1983)).    The performance of counsel in this case was not substandard.   Accordingly, no reduction is warranted under this factor.

**B.    The Results Achieved**

Wilborn won benefits for his client.   "The circumstances of the case in which the result is achieved, however, are important to the court's assessment of this factor.   The inquiry focuses on whether counsel's efforts made a 'meaningful and material contribution towards the result achieved[.]'" *Dunnigan*, 2009 WL 6067058, at *11 (citing *Lind v. Astrue*, No. SACV 03-01499 AN, 2009 WL 499070, at *4 (C.D. Cal. 2009)).   Here, the parties stipulated that the case be remanded to the Commissioner for a *de novo* hearing and assignment to a new ALJ.    Thus, to quote Judge Acosta in *Dunnigan*, "[the] attorney faced a less daunting challenge here than he would have if the Commissioner had vigorously defended the ALJ's decision or argued to uphold the ALJ's decision because the errors could not be reversed under the controlling standard of review." *Id.*   Moreover, the court never had to evaluate the record and prepare a Findings and Recommendation on the alleged errors by the

ALJ.  Nor was Wilborn forced to defend or object to this court's recommendation.  The parties simply stipulated to a remand.

In short, the results achieved by a Social Security practitioner cannot be viewed in isolation.  The court has an affirmative duty to assess the fees for reasonableness and must avoid the pitfall of "[r]outine approval of the statutory maximum allowable fee [which] should be avoided in all cases." *Id.* at *12 (citing *Lewis*, 707 F.2d at 250).  Here, the circumstances support a reduction from the 25 percent maximum.

### C.  Delay Attributable to the Attorney

The court may reduce a § 406(b) fee for delays in the proceedings attributable to the claimant's attorney. *Crawford*, 586 F.3d at 1151.  The *Gisbrecht* court observed that a reduction on this ground is appropriate if the requesting attorney inappropriately caused delay in proceedings, so that the attorney "will not profit from the accumulation of benefits" while the case is pending. *Gisbrecht*, 535 U.S. at 808.  Here, Wilborn requested an extension of 30 days to file the IFP application because the deadline for filing the lawsuit was prior to the time he could obtain the completed IFP application form back from his client. (Doc. #2)  One request for an extension of time does not equate to engaging in unreasonable delay.  Accordingly, reduction under this factor is not warranted.

### D.  Proportionality of the Fee Request to the Time Expended

The court may reduce a § 406(b) fee "for . . . benefits that are not in proportion to the time spent on the case." *Crawford*, 586 F.3d at 1151 (citing *Gisbrecht*, 535 U.S. at 808, 122 S.Ct. 1817).  In making this determination, the court may look to

FINDINGS AND RECOMMENDATION     10

counsel's record of hours spent and a statement of normal hourly billing. *Id.*

Wilborn submitted time records in support of his request for EAJA fees (doc. #21 Ex. 1), which indicate that Wilborn spent a total of 29.30 hours on this case. In *Harden v. Commissioner*, 497 F. Supp. 2d. 1214, 1215 (D. Or. 2007), Judge Mosman observed that "[t]here is some consensus among the district courts that 20-40 hours is a reasonable amount of time to spend on a Social Security case that does not present particular difficulty." Judge Mosman also stated that absent unusual circumstances or complexity, "this range provides an accurate framework for measuring whether the amount of time counsel spent is reasonable." *Id.* at 1216.

In *Dunnigan*, the claimant's attorney spent an equal amount of time on that case as he had invested on most of his cases, yet he requested the highest fee permitted under the statute.[2] *Dunnigan*, 2009 WL 6067058, at *13. Similarly, in this case, Wilborn is requesting the highest fee permitted under the statute. Therefore, as in *Dunnigan*, a comparison with Wilborn's other § 406(b) cases would be instructive.[3] *See id.*

In *Gomez v. Astrue*, Wilborn obtained an award of $81,234.60 in past-due benefits for his client. *Gomez*, No. CV 09-869-SU, 2011 WL 2112596, at *1 (D. Or. May 3, 2011). Wilborn sought $20,308.65 in § 406(b) fees, or 25 percent of the awarded benefits. *Id.* Wilborn argued that the ALJ's decision was erroneous because (1) the ALJ

---

[2] The administrative record in *Dunnigan* was 597 pages long. (CV 07-1645, doc. #11.)

[3] *See also* Exhibit 1 *infra* at 23.

failed to provide adequate reasons for finding the claimant not credible; (2) the ALJ failed to appropriately assess a VA finding of partial disability; (3) there was not substantial evidence in the record to support the ALJ's decision; and (4) the ALJ's Residual Functional Capacity ("RFC") assessment established that the claimant was disabled. *Gomez v. Astrue*, 2010 WL 5137603, at *13 (D. Or. Sept. 8, 2010). The court agreed with Wilborn's arguments and recommended that the ALJ's decision be reversed. *Id.* at *20. The Government did not object to the Findings and Recommendation, therefore, Wilborn only filed an opening brief and a reply brief. The two briefs were a combined total of twenty-seven pages. The administrative record was 939 pages long. Wilborn spent 36.55 hours on the *Gomez* case, he was awarded $20,308.65 in § 406(b) fees, or 25 percent of the past due benefits, which resulted in an effective hourly rate of $555.64. (CV 09-869, doc. #21 Ex. 1; doc. #27.)

In *Rife v. Astrue*, Wilborn obtained an award of $37,437 in past-due benefits. (*See* CV 09-1454, doc. #23 at 1; doc. #23 Ex. 1.) Wilborn sought $9,349.25 in § 406(b) fees, which represented 25 percent of the awarded benefits. *Rife*, 2011 WL 1521800, at *1. Wilborn argued that the ALJ erred by: (1) rejecting the claimant's testimony; (2) finding the claimant's chronic obstructive pulmonary disease and anxiety were non-severe impairments; (3) improperly rejecting a doctor's opinion; (4) improperly rejecting lay witness testimony from the claimant's sister; and (5) failing to provide a complete hypothetical to the Vocational Expert. *Rife*, No. CV 09-1454, 2010 WL 5128199, at *2 (D. Or. Dec. 9, 2010). The court agreed with Wilborn and ordered the ALJ's decision be reversed.

1  Wilborn filed an opening brief and reply brief, which were a
2  combined total of twenty-eight pages.  The administrative record
3  was 855 pages long.  No appeal was filed.  Wilborn spent 34.70
4  hours on the *Rife* case, he was awarded $9,359.25 in § 406(b) fees,
5  or 25 percent of past-due benefits, which resulted in an effective
6  hourly rate of $269.72.  (CV 09-1454, doc #18 Ex. 1; doc. #25.)

7       In *Wojtecki v. Comm'r of Soc. Sec.*, Wilborn obtained an award
8  $82,932 in past-due benefits.  *Wojtecki*, No. CV 09-584-ST, 2011 WL
9  1694462, at *2 (D. Or. April 6, 2011).  Wilborn sought $20,733 in
10 § 406(b) fees, or 25 percent of the past-due benefits.  *Id.*
11 Wilborn argued for reversal based on the following alleged errors
12 by the ALJ: (1) the ALJ erred by not giving great weight to the
13 VA's determination of disability; (2) by finding the claimant's
14 testimony not credible; and (3) by rejecting the testimony of two
15 of his treating sources.  (CV 09-584, doc. #22 at 16.)  The court
16 agreed with Wilborn and recommended that the ALJ's decision be
17 reversed.  (*Id.* at 29.)  The Government did not object to the
18 Findings and Recommendation, therefore, Wilborn only filed an
19 opening brief and a reply brief, which were a combined total of
20 twenty-eight pages.  The administrative record was 593 pages long.
21 No appeal was filed.  Wilborn spent 40.70 hours on the *Wojtecki*
22 case, he was awarded $20,733 in § 406(b) fees, or 25 percent of
23 past-due benefits, which resulted in an effective hourly rate of
24 $509.41.  (CV 09-584, doc. #26 Ex. 1; doc. #33.)

25      In *Oerding v. Comm'r of Soc. Sec.*, Wilborn obtained an award
26 $45,891 in past-due benefits.  *Oerding,* CV 08-633-PK, 2010 WL
27 4116604, at *4 (D. Or. Sept. 3, 2010).  Wilborn sought $11,472.75
28 in § 406(b) fees, or 25 percent of the past-due benefits.  *Id.*  The

FINDINGS AND RECOMMENDATION     13

1  parties stipulated to a remand before the ALJ. (CV 08-633, doc.
2  #19.) On remand, the ALJ was ordered to: (1) obtain a copy of the
3  Rating Decision of the VA, which explains the evidence and
4  rationale supporting the VA's service-connected disability
5  decision; (2) to re-assess all of the medical evidence of record;
6  (3) to re-assess the severity of the claimant's mental impairments;
7  and (4) to re-assess the statements of two lay witnesses. (CV 08-
8  633, doc. #21.) Wilborn only had to file an opening brief, which
9  was twenty pages long. The administrative record was 603 pages
10 long. Wilborn spent 27.65 hours on the *Oerding* case, he was
11 awarded $5,965.83 in § 406(b) fees, or 13 percent of past-due
12 benefits, which resulted in an effective hourly rate of $215.76.
13 (CV 08-633, doc. #21 Ex. 1; doc. #31.)

14     In *Coney v. Astrue*, Wilborn obtained an award of $69,965 in
15 past-due benefits. *See Coney*, No. CV 08-859-HA, 2010 WL 5069844,
16 at *1 (D. Or. Dec. 7, 2010). Wilborn sought $17,491.25 in § 406(b)
17 fees, or 25 percent of the past-due benefits. *Id.* Wilborn argued
18 that the ALJ erred by: (1) improperly relying on Vocational Expert
19 testimony that conflicts with the Dictionary of Occupation Titles;
20 (2) improperly rejecting the opinions of treating examining
21 physicians, (3) improperly rejecting a VA disability rating; and
22 (4) improperly rejecting lay witness testimony. (CV 08-859, doc.
23 #21 at 6-7.) The court agreed with Wilborn and reversed the ALJ's
24 decision. (CV 08-859, doc #21 at 11.) Wilborn filed an opening
25 brief and a reply brief, which were a combined total of thirty-five
26 pages. The administrative record was 414 pages long. No appeal
27 was filed. Wilborn spent 37.70 hours on the *Coney* case, he was
28 awarded $17,491.25 in § 406(b) fees, or 25 percent of past-due

FINDINGS AND RECOMMENDATION    14

benefits, which resulted in an effective hourly rate of $463.96.
(CV 08-859, doc. #23 Ex. 1; doc. #30.)

Typically, as this line of cases demonstrates, Wilborn's §
406(b) cases are distinguishable from *Crawford* because the court is
never dealing with counsel that "voluntarily evaluated the fees in
comparison to the amount of time spent on the case . . . [and]
voluntarily reduced those fees substantially from the allowable
25%." *Crawford*, 586 F.3d at 1152. "The [Crawford] attorneys . . .
themselves suggested that the full 25% fee provided for by their
fee agreements would be unreasonable." *Id.* at 1150 n.8. In the
present case, Wilborn was presented a far less onerous task than
that of *Crawford*. This is a stipulated remand in the district
court versus taking a case to the United States Court of Appeals.
In claimant Trejo's case, counsel waited six years for resolution.
*Id.* at 1152 n.10. Furthermore, I agree with Judge Acosta that,
"[i]t is reasonable to conclude, consistent with the Sixth
Circuit's view that full fee awards should be the *exception*, that
an average expenditure of time should not as a matter of routine
translate to an award of the statutory maximum contingent fee, but
instead suggests a more moderate attorney fee as the appropriate
consideration." *Dunnigan*, 2009 WL 6067058, at *13 (emphasis
added).

In virtually every one of Wilborn's cases he requests the
maximum amount of fees allowable under § 406(b). Whatever amount
of past-due benefits he is awarded, regardless of the complexity of
the case, he requests the maximum amount of § 406(b) fees. He then
proceeds to divide that number by the hours he worked, which
produces an effective hourly rate. Once his effective hourly rate

1  is established, he then justifies that rate in every case based on
2  the same lodestar approach I will detail below. (*Compare Baugh*, CV
3  08-1237, doc. #26, *Gomez*, CV 09-869, doc. #25, *Hardisty*, CV 06-1670
4  doc. #36, *Adams*, CV 06-1674, doc. #19, *Pennington*, CV 07-1816, doc.
5  #30, *Oerding*, CV 08-633, doc. #27, *Coney*, CV 08-859, doc. #28,
6  *Kanges*, CV 08-117, doc. #31, *Parrish*, CV 08-969, doc. #34,
7  *Wojtecki*, CV 09-584, doc. #31, *and Rife*, CV 09-1454, doc. #23.)

8      Wilborn's effective hourly rate, in this case, is $586.61.
9  Wilborn has no set hourly rate for representing disability
10 claimants and has not submitted any evidence concerning a normal
11 hourly rate he charges in non-contingent matters.  Instead, Wilborn
12 argues that his fee is reasonable by referring to the Oregon State
13 Bar 2007 Economic Survey ("Survey"), used by judges in this court
14 as a benchmark for determining hourly rates for attorney fees in
15 fee shifting cases, reports that attorneys practicing in "other
16 areas" in Portland average $244 per hour.  (*Id.*)

17     Wilborn argues for an upward adjustment of this benchmark
18 rate, based on the risks of representing Social Security claimants.
19 (*Id.*)  He asserts that there is only a 33.52 percent chance of
20 winning benefits for the claimant in Social Security cases.  (*Id.*)
21 Thus, according to Wilborn, a contingency multiplier of 2.98
22 (100/33.52) is warranted to make up for the risk of non-payment.
23 Applying this multiplier to the average hourly rate of $244
24 produces a rate of $727.12 an hour, which Wilborn contends is
25 average for all § 406(b) cases.  (*Id.* at 5.)  Wilborn therefore
26 argues that since his effective hourly rate is below the range
27 "shown to be justified," it is reasonable.  I find Wilborn's
28 analysis inappropriate because it fails to comply with *Crawford's*

FINDINGS AND RECOMMENDATION    16

directive that the risk to be considered must be case specific.
Wilborn's case specific analysis is a single cursory sentence
pertaining to the credibility of his client. (Mem. Supp. Pl.'s
Mot. at 3.) Such criticism of Wilborn's attorney fee analysis is
nothing new, however. *See Clester v Comm'r of Soc. Sec.*, 2011 WL
344036, at *4 (D. Or. 2011); *Wojtecki v. Comm'r of Soc. Sec.*, 2011
WL 1694462, at *4 (D. Or. 2011); *Parrish v. Astrue*, 2011 WL
1458031, at *4 (D. Or. 2011); *Pennington v. Comm'r of Soc. Sec.*,
2010 WL 3491522, at *4 (D. Or. 2010).

       As an alternative justification for his high effective hourly
rate, Wilborn cites a bevy cases that awarded an even higher
effective hourly rate. (Mem. Supp. Pl.'s Mot. at 8.) However,
this argument has also been rejected by a judge in this district.
*See, e.g., Clester*, 2011 WL 344036, at *4 (D. Or. 2011). In
*Clester*, Judge Stewart correctly noted that:

> [I]n all of those cases but one (*Carver v. Astrue*, No.
> 08-CV-6099-MO), the court simply signed the proposed
> order from plaintiff's counsel awarding 25% of the past
> due benefits without analyzing the factors required by
> *Crawford*. In fact, most of those cases were decided
> prior to *Crawford*. *See Harris v. Comm'r of Soc. Sec.
> Admin.*, No. 06-CV-1256-MA (July 15, 2009) ($768.76/hour);
> *Smith v. Comm'r of Soc. Sec. Admin.*, No. 07-CV-974-MA
> (June 19, 2009) ($715.53/hour); *Wright v. Comm'r of Soc.
> Sec. Admin.*, No. 07-CV-47-ST (Oct. 7, 2008)
> ($800.26/hour); *Scott v. Comm'r of Soc. Sec. Admin.*, No.
> 04-CV-1671-JE (May 27, 2008) ($768.76/hour). [Wilborn]
> also neglects to mention a number of other more recent
> cases in which, after addressing the *Crawford* factors,
> this court awarded significantly lower effective hourly
> rates to them. *See Pennington v. Comm'r of Soc. Sec.
> Admin.*, No 08-CV-1202-ST ($475.71/hour); *Oerding v.
> Comm'r of Soc. Sec. Admin.*, No 08-CV-633-PK (request of
> $414.93/hour reduced to $215.76/hour); *Clark v. Comm'r of
> Soc. Sec. Admin.*, No. 07-CV-702-AC ($411.04).

*Id.*

FINDINGS AND RECOMMENDATION      17

1    In short, I reject Wilborn's approach since it bears no
2    relationship to the amount of work reasonably necessary to achieve
3    the result, nor to the *Crawford* analysis. *See also id.*

4    The Ninth Circuit made clear that, "the *attorney's*
5    *burden* . . . is to show that the fee is reasonable *based on the*
6    *facts of the particular case.*" *Crawford*, 586 F.3d at 1153
7    (emphasis added). Wilborn has not met this burden. He submitted
8    a memorandum in support of his motion that is virtually identical
9    to a memorandum he submitted to Judge Sullivan in *Gomez v. Astrue*,
10   No. CV 09-869-SU, 2011 WL 2112596 (D. Or. May 03, 2011). (*Compare*
11   *Baugh v. Astrue*, No. CV 08-1237, doc. #26, *and Gomez*, No CV 09-869,
12   doc. #25.) Literally, the only material alterations are the
13   relevant dollar figures**,** a handful of irrelevant words, and one
14   sentence that the  case is risky because: "The primary arguments
15   relied on issues of credibility of the claimant's reporting (both
16   to SSA and to her doctors), and the claimant has a documented
17   history of dishonest behavior, including shoplifting." (Mem. Supp.
18   Pl.'s Mot. at 3.) Wilborn's memorandum is entirely lacking of
19   arguments "based on the facts of the particular case." Thus,
20   *Crawford's* mandate has not been followed and Wilborn's burden has
21   not been met.

22   While this court previously noted my criticisms of Wilborn's
23   arguments in *Kanges v. Astrue*, No. 08-CV-117-HU, 2011 WL 100218 (D.
24   Or. Mar. 18, 2011), Judge Brown ultimately granted Wilborn the
25   maximum § 406(b) fee award of 25 percent of the past-due benefits
26   because:

27       After reviewing [Wilborn]'s arguments *in toto*, this Court
         concludes [Wilborn] merely offered the lodestar analysis
28       as an additional means of demonstrating the

FINDINGS AND RECOMMENDATION    18

> reasonableness of the contingency-fee agreement. Such an approach is not foreclosed by *Gisbrecht* or *Crawford*. As the *Crawford* court noted, '[t]he Supreme Court did acknowledge that the district court could consider the lodestar calculation, but only as an aid in assessing the reasonableness of the fee.

*Id.* at *5 (citation omitted). However, Judge Brown went on to state:

> Although the Court now approves the contingency-fee award sought by [Wilborn] based on the briefing that [Wilborn] submitted in the Objection to the Magistrate Judge's Findings and Recommendation, **the Court agrees with the Magistrate Judge's admonishment to counsel** that § 406(b) requests must conform to the requirements of the Local Rules and those set out in *Gisbrecht* and *Crawford*. **Counsel cannot ignore the *Gisbrecht* and *Crawford* factors and merely recite a mathematical assessment of the need for contingency-fee awards to be in excess of the average hourly rates for noncontingency-fee work.**

*Id.* at *6 (emphasis added). The fee request in this case however continues to ignore the *Gisbrecht* and *Crawford* factors. *See also Stokes v. Comm'r of Soc. Sec.*, No. 10-35628, 2011 WL 1749064, at *1 (9th Cir. May 9, 2011) (finding that it was not an abuse of discretion for a district judge to admonish a Social Security practitioner for "completely ignor[ing]" *Crawford's* guidance and "instead discussing general policy considerations" and the generally high risk in litigating social security cases.") While Wilborn puts the *Gisbrecht* and *Crawford* factors in boldface, his arguments are not specific, they are generic. Another conclusion cannot logically be drawn from the fact that his memorandum in this case is virtually identical to the memorandum he submitted to Judge Sullivan in *Gomez*.

### III. **The §406(b) Fee Award**

Wilborn seeks a fee of $17,197.63, an amount he says represents 25 percent of past-due benefits his client will receive.

FINDINGS AND RECOMMENDATION    19

1  Applying the *Gisbrecht* factors and guided by the Ninth Circuit's
2  *Crawford* discussion of those factors, I have determined that
3  Wilborn's § 406(b) fee request should be reduced by fifty percent.
4  This percentage accounts for reduction under the factors discussed
5  above and counsel's failure to support his fee request consistent
6  with *Crawford's* directives.

7      Reducing Wilborn's fee is also appropriate based on the
8  typical nature of the facts and legal issues presented by this
9  case.  Here, the ALJ's errors were clearly evident, as evinced by
10  the stipulated remand.   And, the litigation proceedings were
11  completely uncontested by the Government, which eased Wilborn's
12  task considerably. *See also Stokes*, No. 10-35628, 2011 WL 1749064,
13  at *1 (noting that "[t]he record supports that this was a
14  'relatively simple' litigation" since "the district court
15  proceedings were largely uncontested by the Social Security
16  Commissioner.")

17      Moreover, a fifty percent reduction is supported by this
18  court's decision in *Oerding v. Astrue*, No. CV 08-633-PK, 2010 WL
19  4116570 (D. Or. Oct. 18, 2010).  In *Oerding,* the parties stipulated
20  to remand for a *de novo* hearing in order to "obtain explanatory
21  documents and re-assess the medical evidence and witness
22  statements." *Oerding*, 2010 WL 4116604, at *1.  Wilborn once again
23  requested the maximum § 406(b) award of 25 percent. *Id*.  Wilborn
24  had won a remand for his client, but the Commissioner did not
25  dispute that remanding the action was proper. *Id.* at *3.  Thus, as
26  in this case, Wilborn did nothing more than file an opening brief.
27  *Id.*  As to the results achieved, the court held that, "[a]
28  successful result, even obtaining an order for an award of

FINDINGS AND RECOMMENDATION    20

benefits, should not be viewed in isolation, and does not require a fee award of 25 percent of a claimant's retroactive benefits award." *Id.* (citing *Dunnigan*, 2009 WL 6067058, at *12). The court accepted the reasonableness of the 27.65 hours Wilborn billed, which is 1.65 hours less than he billed in this case. *Id.* at *4. Nevertheless, it was determined that an award of 25 percent of retroactive benefits would result in a disproportionate windfall. *Id.* Wilborn's § 406(b) fee was therefore reduced to 13 percent[4] of the retroactive benefit award. *Id.*

Finally, Wilborn presented limited evidence concerning the risk of this case. However, as the judge assigned to this case from it's beginning, I have reviewed the case and I find it presented a better than average opportunity for success in obtaining benefits. The issues raised are far from uncommon or difficult.

In short, *Crawford* made clear that district judges have an "affirmative duty" to assure the reasonableness of a § 406(b) fee award because the SSA "has no direct interest in how much of the award goes to counsel and how much to the disabled person[.]" *Id.* at 1149. Based on my experience making reasonableness determinations, I find that a reduction of fifty percent of the fees requested is warranted to bring the fees awarded in line with the recovery obtained and the work completed.

///

///

---

[4] In this case, a reduction of fifty percent will result in an award of 12.5 percent of past-due benefits ($8,593.81/ $68,750.52).

**Conclusion**

For the reasons stated above, Plaintiff's Motion For Approval Of Attorney's Fees (doc. #25) pursuant to 42 U.S.C. § 406(b) should be GRANTED in part and Plaintiff's counsel should be awarded $8,593.81 in § 406(b) fees less the $5,000.00 already received in EAJA fees.

**Scheduling Order**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due September 30, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due October 17, 2011.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  12th day of September, 2011.

/s/ Dennis J. Hubel

_____

Dennis James Hubel
United States Magistrate Judge

FINDINGS AND RECOMMENDATION       22

**Exhibit 1**

| Case | Procedural Posture | Record Length | Opening & Reply Brief Lengths | Hours Spent | § 406(b) Fee Requested | % Past Due Benefits Requested | Effective Hourly Rate Requested |
|------|--------------------|---------------|-------------------------------|-------------|------------------------|-------------------------------|---------------------------------|
| **Baugh** 08-1237 | Stipulated Remand | 721 pages | 20 pages & N/A | 29.30 | $17,1787.63 | 25% | $586.61 |
| **Gomez** 09-869 | F&R filed; no objections; remanded for benefits | 939 pages | 16 pages & N/A | 36.55 | $20,308.65 | 25% | $555.64 |
| **Hardisty** 06-1670 | Opinion filed; remanded for benefits | 301 pages | 20 pages & 9 pages | 45.45 | $7,230.75 | 25% | $159.09 |
| **Adams** 06-1674 | Opinion filed; remanded for further proceedings | 459 pages | 31 pages & 9 pages | 49.55 | $7,499 | 25% | $151.34 |
| **Pennington** 07-1816 | Stipulated Remand | 328 pages | 20 pages & N/A | 28.40 | $11,897 | 25% | $418.91 |
| **Oerding** 08-633 | Stipulated Remand | 603 pages | 20 pages & N/A | 27.65 | $11,472.75 | 25% | $414.93 |
| **Coney** 08-859 | Opinion filed; remanded for benefits | 414 pages | 20 pages & 15 pages | 37.7 | $17,491.25 | 25% | $463.96 |
| **Kanges** 08-117 | Stipulated Remand | 1365 pages | 18 pages & N/A | 31.4 | $16,353.50 | 25% | $520.81 |
| **Parrish** 08-969 | Commissioner conceded to remand for further proceedings; F&R filed remanding for an award of benefits | 336 pages | 29 pages & N/A | 38.3 | $9,059.89 | 25% | $236.55 |
| **Wojtecki** 09-584 | F&R filed; no objections; remanded for benefits | 593 pages | 20 pages & 8 pages | 40.7 | $20,733 | 25% | $509.41 |
| **Rife** 09-1454 | Opinion filed; remanded for benefits | 855 pages | 20 pages & 8 pages | 34.7 | $9,359.25 | 25% | $269.72 |

FINDINGS AND RECOMMENDATION     23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINDINGS AND RECOMMENDATION    24